25CA0085 Peo v Cain 07-30-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0085
Mesa County District Court No. 95CR547
Honorable Brian J. Flynn, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Raymond Cain,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE BROWN
Freyre and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Ramsey Lama Law, PLLC, Ramsey Lama, Canon City, Colorado, for Defendant-Appellant

¶ 1    Defendant, Raymond Cain, appeals the postconviction court's order denying his Crim. P. 35(c) motion without conducting a hearing.  We affirm.

## I.    Background

¶ 2    In 1995, Cain and two friends, Gabriel Rivera and Forest Grant Porter, robbed two young women — S.F. and S.B.  During the robbery, Cain shot both women in the head.  S.F. died, and S.B. was seriously wounded but survived.

¶ 3    The prosecution charged Cain with first degree murder after deliberation of S.F., first degree felony murder of S.F., attempted first degree murder after deliberation of S.B., conspiracy to commit first degree murder after deliberation, conspiracy to commit aggravated robbery, and twelve crime of violence sentence enhancers.  After a thirteen-day trial, a jury acquitted Cain of first degree murder after deliberation but found him guilty of first degree felony murder of S.F., attempted first degree murder after deliberation of S.B., conspiracy to commit first degree murder after deliberation, conspiracy to commit aggravated robbery, attempt to

1

possess methamphetamine,[1] and eight crime of violence sentence enhancers.[2]

¶ 4    Rivera and Porter were tried separately.  A jury found Rivera guilty of first degree felony murder, conspiracy to commit aggravated robbery, and attempt to possess cocaine.  A different jury found Porter guilty of first degree felony murder, conspiracy to commit first degree murder after deliberation, and conspiracy to commit aggravated robbery.  Both codefendants were charged with but acquitted of attempted first degree murder.

¶ 5    In 1997, appellate counsel Richard Tegtmeier filed a direct appeal of Cain's conviction challenging the district court's failure to respond to a mid-deliberation jury question; the constitutionality of the juvenile direct file statute; the information and jury instructions concerning conspiracy, attempted first degree murder, and complicity; the admission of hearsay evidence; and the prosecution's alleged failure to preserve exculpatory evidence.  A division of this court affirmed, and the mandate issued in

---

[1] It appears that this charge was added as a lesser nonincluded offense at some point during trial.
[2] Some of the crime of violence sentence enhancers were dismissed before the jury rendered its verdict.

September 1998. *See People v. Cain,* (Colo. App. No. 96CA0393, Nov. 13, 1997) (not published pursuant to C.A.R. 35(f)).

¶ 6　　In 1998, Rivera filed a direct appeal, and a division of this court reversed his felony murder conviction because the trial court failed to adequately instruct the jury on all the elements of felony murder — in particular, the instructions did not define criminal attempt. *See People v. Rivera,* (Colo. App. No. 95CA1708, Jan. 22, 1998) (not published pursuant to C.A.R. 35(f)). In 2000, Porter filed a direct appeal, and a division of this court reversed his felony murder conviction on the same basis. *See People v. Porter,* (Colo. App. No. 96CA1026, June 14, 2001) (not published pursuant to C.A.R. 35(f)).

¶ 7　　In 2005, Richard Bednarski, a lawyer at the same law firm as Tegtmeier (then called Tegtmeier, Frank & Jones, LLC), filed a Crim. P. 35(c) motion on Cain's behalf, alleging that trial counsel had provided ineffective assistance by failing to prevent Porter and S.B. from testifying, failing to challenge S.B.'s identification of Cain, and failing to investigate the bullet casings found at the scene before the prosecution lost the evidence. After a hearing, the postconviction court denied the motion. Through new appellate counsel, David

3

Lane of the firm Killmer, Lane & Newman, LLP, Cain appealed the denial of his postconviction motion, and a division of this court affirmed. *See People v. Cain*, (Colo. App. No. 06CA1106, Oct. 16, 2008) (not published pursuant to C.A.R. 35(f)).

¶ 8　　In 2010, Tegtmeier and Bednarski (then at a firm called the Tegtmeier Bednarski Law Firm, LLC) filed a second Crim. P. 35(c) motion based on prosecutorial misconduct in withholding evidence and a motion for new trial based on newly discovered evidence. The postconviction court denied the motions. Through different appellate counsel, Antony Noble of The Noble Law Firm, LLC, Cain filed but later dismissed an appeal of those orders.

¶ 9　　In 2013, Bednarski and Noble filed a third Crim. P. 35(c) motion asserting that Cain's sentence to life without the possibility of parole was unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), because he was a juvenile at the time he committed his crimes. The postconviction court initially denied the motion but reconsidered that ruling after the Supreme Court determined that *Miller* applied retroactively, *see Montgomery v. Louisiana*, 577 U.S. 190 (2016). After a hearing, the court resentenced Cain to life with the possibility of parole after forty years.

¶ 10    In 2023, through another set of attorneys, Ramsey Lama and Thom LeDoux of the firm Lama, Luchetta & LeDoux, LLP, Cain filed a fourth Crim. P. 35(c) motion, asserting that (1) trial counsel were ineffective for failing to object to the errors in the felony murder and attempted first degree murder instructions; (2) appellate counsel was ineffective for failing to raise the instructional errors on direct appeal; and (3) prior postconviction counsel were ineffective for (a) failing to allege ineffective assistance of appellate counsel and (b) having an actual conflict of interest.

¶ 11    Cain alleged that appellate counsel Tegtmeier had advised him and first postconviction counsel Bednarski that the instructional errors present in his codefendants' cases did not exist in his case and that he reasonably relied upon that advice.  Cain also argued that ineffective assistance of counsel claims are not successive, that his attack on his felony murder conviction (a class 1 felony) had no time bar, and that counsel's ineffective assistance established justifiable excuse or excusable neglect allowing him to attack his attempted first degree murder conviction (a class 2 felony) beyond the time limit established by section 16-5-402(1), C.R.S. 2025.

¶ 12    The postconviction court ordered the prosecution to respond to the motion.  The prosecution argued that Cain's claims were successive, that his ineffective assistance claim related to his felony murder conviction was barred by the equitable doctrine of laches, and that he had not established justifiable excuse or excusable neglect for his untimely ineffective assistance claim related to his attempted murder conviction.  The prosecution also argued that the district court had properly instructed the jury on all elements of the challenged convictions.

¶ 13    After Cain filed a reply, the postconviction court denied the Crim. P. 35(c) motion without conducting a hearing.  The court adopted the prosecution's reasoning that (1) Cain's ineffective assistance claim related to his felony murder conviction was barred by laches, and (2) Cain had not established justifiable excuse or excusable neglect for his untimely ineffective assistance claims related to his attempted murder conviction.

## II.    Standard of Review

¶ 14    We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing.  *People v. Cali*, 2020 CO 20, ¶ 14. We also review de novo whether a defendant has alleged facts that,

6

if true, would constitute justifiable excuse or excusable neglect. *See People v. Chavez-Torres*, 2019 CO 59, ¶ 11 (citing *Close v. People*, 180 P.3d 1015, 1019 (Colo. 2008)); § 16-5-402(2)(d). We may affirm a postconviction court's order on any ground supported by the record, whether or not the court relied on or considered that ground. *People v. Cooper*, 2023 COA 113, ¶ 7.

## III.  Analysis

¶ 15    Cain contends that the postconviction court erred by summarily denying his postconviction motion because he alleged facts that (1) were sufficient to establish meritorious claims of ineffective assistance of counsel and (2) would overcome any suggestion of undue delay by establishing justifiable excuse or excusable neglect, allowing the court to consider his untimely and successive motion. We first conclude that, even assuming Cain's ineffective assistance claim related to his felony murder instructions is not successive or barred by laches, the claim nonetheless fails because the reversible instructional error present in his codefendants' trials did not exist in his trial. Next, we conclude that Cain's ineffective assistance claim related to his attempted murder instructions is time barred because he failed to sufficiently

allege facts establishing justifiable excuse or excusable neglect for his nearly-three-decade delay in asserting that claim. Consequently, we perceive no error by the postconviction court in denying Cain's most recent Crim. P. 35(c) motion without conducting a hearing.

### A. Summary Denial of Crim. P. 35(c) Motions

¶ 16 A postconviction court may summarily deny a Crim. P. 35(c) motion without a hearing if the motion, files, and record clearly establish that the defendant is not entitled to relief; if the allegations, even if true, do not provide a basis for relief; or if the claims are bare and conclusory in nature and lack supporting factual allegations. *People v. Chipman*, 2015 COA 142, ¶ 25. If the court requests a response from the prosecution and allows a defendant to file a reply, it must grant a hearing unless, "'based on the pleadings,' the court finds that it is appropriate to enter a summary ruling containing written findings of fact and conclusions of law." *People v. Smith*, 2017 COA 12, ¶ 2 (quoting Crim. P. 35(c)(3)(V)). "[W]hen a party's briefing references or attaches a portion of the existing record, the postconviction court can consider

8

it when determining whether a hearing is warranted." *People v. Martinez*, 2026 COA 7, ¶ 25.

¶ 17    There is no statutory time limit restricting when a defendant may collaterally attack a class 1 felony conviction.  § 16-5-402(1).  But postconviction collateral attacks on non-class 1 felony convictions generally must be filed within three years following the conviction.  *Id.*; *see People v. Collier*, 151 P.3d 668, 671 (Colo. App. 2006).  Even so, a court may consider claims that would otherwise be time barred if it finds that the delay was due to justifiable excuse or excusable neglect.  § 16-5-402(2)(d).  "Ineffective assistance of counsel can constitute justifiable excuse or excusable neglect." *People v. Valdez*, 178 P.3d 1269, 1278 (Colo. App. 2007).

¶ 18    The equitable doctrine of laches may also bar a postconviction claim even when section 16-5-402 would not.  *Robbins v. People*, 107 P.3d 384, 390 (Colo. 2005).  Laches applies when a party's "unconscionable delay in enforcing his rights has prejudiced the party against whom relief is sought." *Id.* at 388.  For laches to apply, "the record must show lack of diligence in the face of actual knowledge of the conditions giving rise to the claim." *Id.*

¶ 19    A court may also summarily deny a postconviction motion as successive if a defendant raised or could have raised the claim in a prior appeal or postconviction motion. *See* Crim. P. 35(c)(3)(VI), (VII). Generally, claims of ineffective assistance of counsel are not successive. *See* Crim. P. 35(c)(3)(VIII) ("[T]he court shall not deny a postconviction claim of ineffective assistance of trial counsel on the ground that all or part of the claim could have been raised on direct appeal[.]"); *People v. Clouse*, 74 P.3d 336, 341 (Colo. App. 2002) (a claim of ineffective assistance of postconviction counsel is not successive to a defendant's first postconviction motion).

### B.    Ineffective Assistance of Counsel

¶ 20    A criminal defendant is constitutionally entitled to effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, in that it fell below the minimum standard guaranteed by the Sixth Amendment; and (2) the defendant was prejudiced, in that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*,

466 U.S. 668, 687-94 (1984); *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). If a defendant fails to establish either the performance prong or the prejudice prong, their claim for ineffective assistance of counsel fails. *See Dunlap*, 173 P.3d at 1063.

¶ 21 To establish the performance prong in the context of appellate counsel, "the defendant must show that counsel failed to present the case effectively." *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005). But "[a]ppellate counsel is not required to raise on appeal every nonfrivolous issue a defendant desires to raise." *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome,' even in the context of a direct appeal." *Id.* (quoting *Ellis v. Hargett*, 302 F.3d 1182, 1189 (10th Cir. 2002)). And to demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's errors, they would have prevailed on appeal. *Long*, 126 P.3d at 286; *see also People v. Valdez*, 789 P.2d 406, 410 (Colo. 1990) (to establish prejudice, the defendant "must demonstrate the existence of meritorious grounds for reversal").

11

## C. Cain's Ineffective Assistance Claim Related to His Felony Murder Conviction Fails on the Merits

¶ 22    Cain contends that (1) trial counsel was ineffective for failing to object to his felony murder instructions on the basis that they did not properly define the predicate offense of attempt to commit robbery; (2) appellate counsel was ineffective for failing to raise the instructional error on appeal; and (3) postconviction counsel was ineffective for failing to raise the instructional error or claim ineffective assistance of trial, appellate, and prior postconviction counsel.  Cain contends that the instructional error was plain and clearly stronger than the other arguments raised on appeal because the same instructional error resulted in the reversal of his codefendants' felony murder convictions.

¶ 23    Because we conclude that Cain's substantive claim of instructional error lacks merit, we necessarily conclude that any allegedly deficient performance by counsel in failing to raise the issue (or failing to assert ineffective assistance of counsel for failing to raise the issue) did not result in *Strickland* prejudice.  *See Trujillo,* 169 P.3d at 239 ("[E]ven if counsel's choice of issues were in error, [the] defendant has not suffered any prejudice" because "he

would not have prevailed on the additional issues . . . .").  Thus, this claim of ineffective assistance of counsel fails.

¶ 24     As relevant here, a defendant commits felony murder if,

> [a]cting either alone or with one or more persons, he commits or attempts to commit . . . robbery, . . . and, in the course of or in furtherance of the crime that he is committing or attempting to commit, or of immediate flight therefrom, the death of a person, other than one of the participants, is caused by anyone.

§ 18-3-102(1)(b), C.R.S. 1995.[3]

¶ 25     Here, the predicate offense for Cain's felony murder charge was robbery or attempted robbery.  Accordingly, proof of robbery or attempted robbery was an element of felony murder, on which the district court was required to accurately instruct the jury.  *See Doubleday v. People*, 2016 CO 3, ¶ 22 (explaining that "the commission or attempt to commit the predicate offense is an essential element of felony murder"); *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011) (the trial court has a duty to accurately instruct the jury concerning the controlling law).

---

[3] We cite section 18-3-102(1)(b), C.R.S. 1995, the version of the felony murder statute in effect at the time of Cain's offense.  Felony murder has since been reclassified as second degree murder. *See* Ch. 58, sec. 2, § 18-3-103(1)(b), 2021 Colo. Sess. Laws 236.

13

¶ 26    A person commits robbery if they "knowingly take[] anything of value from the person or presence of another by the use of force, threats, or intimidation." § 18-4-301(1), C.R.S. 2025.  "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18-2-101(1), C.R.S. 2025.  A "substantial step" is "any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." *Id.*

¶ 27    In Cain's case, Instruction No. 24 provided the elements of felony murder:

> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. acting with one or more persons,
>
> 4. did commit or attempt to commit robbery as defined in these instructions, and
>
> 5. in the course of or in furtherance of the robbery, or in the immediate flight therefrom,
>
> 6. the death of a person, other than one of the participants, is caused by anyone,

14

7. without the affirmative defense in instruction number 26.

¶ 28    Instruction No. 26 explained that "[i]t is an affirmative defense" to felony murder that Cain

> 1. [w]as not the only participant in the robbery, or attempt to commit robbery, and
>
> 2. did not kill or in any way solicit, request, command, importune, cause, or aid in the killing, and
>
> 3. was not armed with a deadly weapon, and
>
> 4. had no reasonable grounds to believe that any other participant was armed with a deadly weapon, and
>
> 5. the defendant did not engage in or intend to engage in and had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious bodily injury, and
>
> 6. the defendant endeavored to immediately disengage himself from the commission of robbery or attempted robbery, or flight therefrom, upon having reasonable grounds to believe that another participant was armed with a deadly weapon, or intended to engage in conduct likely to result in death or serious bodily injury.

¶ 29    Instruction No. 22 provided as follows:

> The elements of the crime of Robbery are:
>
> 1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. knowingly,

4. took anything of value,

5. from the person or presence of [S.B.],

6. by the use of force, threats, or intimidation.

¶ 30 Instruction No. 35 explained that

> [a]ttempt is when a person, acting with the kind of culpability otherwise required for commission of an offense, engages in conduct constituting a substantial step toward the commission of the offense. A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

¶ 31 Cain contends that these jury instructions failed to adequately instruct the jury as to felony murder because no instruction defined the predicate offense of "attempt to commit robbery" or connected Instruction No. 35's definition of "attempt" to Instruction No. 22's elements of robbery or to Instruction No. 24's elements of first degree felony murder. Cain argues that his instructions suffered from "identical" deficiencies as his codefendants' instructions, which resulted in the reversal of their convictions.

16

¶ 32     In Rivera's direct appeal, he challenged his conviction on the basis that the trial court failed to properly define the predicate offense of criminal attempt to commit robbery.  His felony murder instruction identified the elements of that offense as follows:

> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. acting with one or more persons,
>
> 4. attempted to commit robbery as defined in these instructions, and
>
> 5. in the course of or in furtherance of the robbery, or in immediate flight therefrom,
>
> 6. the death of a person, other than one of the participants, is caused by anyone[,]
>
> 7. without the affirmative defense in instruction number 26.[4]

¶ 33     Notably, no instruction given during Rivera's trial separately defined attempt.  *See Rivera,* No. 95CA1708, slip op. at 4.  Instead, attempt was defined as part of two other crimes.  Rivera's attempted

---

[4] Cain attached copies of Rivera's and Porter's jury instructions to his Crim. P. 35(c) motion, so the postconviction court could consider them in denying his postconviction motion, *see People v. Martinez,* 2026 COA 7, ¶ 25, and we can too in resolving his appeal.

first degree murder instruction identified the elements of that

offense as follows:

> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. after deliberation and with intent to cause the death of [S.B.],
>
> 4. engaged in conduct constituting a substantial step toward the commission of Murder of [S.B.] in the First Degree After Deliberation, as defined in these instructions.

And his criminal attempt to possess cocaine instruction identified

the elements of that offense as follows:

> 1. That the defendant,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. with intent to commit the crime of possession of a Schedule II controlled substance: cocaine,
>
> 4. engaged in conduct constituting a substantial step toward the commission of a schedule II controlled substance: cocaine.

"Substantial step" was separately defined, but it was not linked to

"attempt" or to the felony murder instruction. *Id.* at 6. A division of

this court concluded that "the meaning of attempt in connection

with the felony murder charge would not have been apparent to the jurors when viewing the instructions as a whole." *Id.*

¶ 34    "Providing a further basis for confusing the jury," the affirmative defense instruction cross-referenced in Rivera's felony murder instruction referred to the crime of "conspiracy to commit robbery," not to robbery or attempted robbery, and "conspiracy cannot be the predicate offense for a felony murder conviction." *Id.* The division concluded that "when read as a whole, the instructions did not instruct the jury at all as to criminal attempt." *Id.* at 7. Because "attempt" was a necessary element for a conviction of felony murder predicated on attempted robbery, Rivera was deprived of his right to be found guilty of each element beyond a reasonable doubt. *Id.* at 8. The division therefore reversed Rivera's felony murder conviction. *Id.* at 8, 18.

¶ 35    In Porter's direct appeal, he also challenged the trial court's failure to define the predicate offense of criminal attempt to commit robbery. His felony murder instruction identified the elements of that offense as follows:

> 1. That the defendant,

19

2. in the State of Colorado, at or about the date and place charged,

3. acting with one or more persons,

4. attempted to commit robbery as defined in these instructions, and

5. in the course of or in furtherance of the robbery, or in immediate flight therefrom,

6. the death of a person, other than one of the participants, is caused by anyone[,]

7. without the affirmative defense in instruction number 23.

But, as a division of this court noted, the instructions did not define "attempt" "as part of, or as applicable to," felony murder. *Porter*, No. 96CA1026, slip op. at 7-8. Instead, attempt was defined in the elemental instruction for attempted first degree murder as follows:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. after deliberation and with intent to cause the death of [S.B.],

4. engaged in conduct constituting a substantial step toward the commission of Murder of [S.B.] in the First Degree After Deliberation, as defined in these instructions,

5. without the affirmative defense in Instruction number 25.

20

¶ 36    The division noted that the jury was told that each count was a separate and distinct offense that should be considered separately from any other count. *Id.* And the division highlighted that Porter's self-defense instruction, like Rivera's, referenced "conspiracy to commit robbery," incorrectly indicating that conspiracy, of which Porter was convicted, could be a predicate offense to felony murder. *Id.* at 9. Thus, the division concluded it was possible the jury was misled by the instructions and reversed Porter's felony murder conviction. *Id.* at 9-10, 26.

¶ 37    Although the felony murder charges in the codefendants' cases were predicated solely on attempted robbery, the only definitions of attempt were buried in elemental instructions for offenses other than felony murder. Attempt was not separately defined and not linked in any way to robbery or felony murder.

¶ 38    In contrast, Cain's felony murder elemental instruction required the jury to find that Cain "did commit or attempt to commit robbery *as defined in these instructions.*" (Emphasis added.) Robbery was separately and accurately defined in

Instruction No. 22.[5]  And attempt was separately and accurately defined in Instruction No. 35, including what constitutes a "substantial step" toward the commission of an offense.  Unlike Rivera's and Porter's instructions, the definition of attempt in Cain's instructions was not buried as an element of another offense; instead, it readily applied to any instruction containing attempt as an element.

¶ 39    The district court also instructed the jury that "[n]o single rule describes all the law which must be applied.  Therefore, the rules must be construed together as a whole."  Viewed collectively, the instructions accurately informed the jury regarding the elements of felony murder, including the predicate offenses of robbery and "attempt to commit robbery."  *See Johnson v. People*, 2019 CO 17, ¶ 14 ("We do not consider jury instructions in isolation; rather, we

---

[5] Cain argues that "robbery" was only defined as a lesser included crime of conspiracy to commit aggravated robbery.  But the robbery instruction is not so limited.  The instruction does not indicate that it is a lesser included offense or cross-reference any other instruction.  Instead, it simply sets forth the elements of robbery and could be applied to any other instruction referencing robbery "as defined in these instructions," including the felony murder instruction.

consider them 'in the context of the instructions as a whole . . . .'"
(quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991))).[6]

¶ 40    Moreover, in both codefendants' cases, the instruction setting forth the affirmative defense to felony murder sowed more confusion by identifying an offense that could not serve as a predicate for felony murder.  The affirmative defense instruction cross-referenced in Cain's felony murder instruction, however, properly referred to the predicate offenses of robbery and attempt to commit robbery.

¶ 41    In the end, we conclude that any objection to or appeal of Cain's felony murder instruction on the basis that it failed to properly define the predicate offenses of robbery or attempt to commit robbery would have been unsuccessful.  Since Cain's instructional challenge would not have prevailed on appeal, he fails to establish prejudice resulting from trial, appellate, or postconviction counsel's allegedly deficient performance.  *See Long*, 126 P.3d at 286; *Valdez*, 789 P.2d at 410.  Accordingly, we

---

[6] To the extent Cain argues in his reply brief that his felony murder charge had multiple predicate offenses and raises a unanimity concern as an alternative reason why his instructions were erroneous, we decline to consider the argument.  *See People v. Simpson*, 93 P.3d 551, 555 (Colo. App. 2003) (declining to consider an argument presented for the first time in a reply brief).

conclude that the postconviction court did not err by denying this ineffective assistance claim without conducting a hearing. *See Strickland*, 466 U.S. at 687-94; *Dunlap*, 173 P.3d at 1063.

### D. Cain's Challenge to His Attempted First Degree Murder Conviction Is Time Barred

¶ 42 Any collateral attack on Cain's attempted murder conviction is subject to the three-year time limitation of section 16-5-402(1). His conviction became final in 1998 when the mandate issued after his direct appeal. Thus, it is undisputed that Cain's most recent Crim. P. 35(c) motion is untimely as to the attempted murder conviction. But Cain contends that he sufficiently alleged that the delay was the result of circumstances amounting to justifiable excuse or excusable neglect such that the postconviction court should not have denied the motion without conducting a hearing at which he could prove his factual allegations. We are not persuaded.

¶ 43 In determining whether justifiable excuse or excusable neglect exists, we must "consider the circumstances existing throughout the entire period from the inception of the conviction in question." *People v. Wiedemer*, 852 P.2d 424, 441 (Colo. 1993). Factors a court may consider include, but are not limited to,

> (1) whether there are circumstances or outside influences preventing a challenge to a prior conviction and the extent to which the defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of relevant avenues of relief that are available;
>
> (2) whether a defendant had any previous need to challenge a conviction and either knew that it was constitutionally infirm or had reason to question its validity;
>
> (3) whether a defendant had other means of preventing the government's use of the conviction, so that a post-conviction challenge was previously unnecessary; and
>
> (4) whether the passage of time has an effect on the [prosecution's] ability to defend against the challenge.

*Close*, 180 P.3d at 1019-20 (citing *Wiedemer*, 852 P.2d at 441-42).

¶ 44    In his most recent postconviction motion, Cain asserted the following facts related to the *Wiedemer* factors: (1) he relied on appellate counsel Tegtmeier's allegedly erroneous advice that the instructional errors present in his codefendants' cases were not present in his case; (2) postconviction counsel Bednarski had an actual conflict of interest that prevented him from challenging Tegtmeier's appellate performance because Bednarski was an associate at the same firm as Tegtmeier; (3) Bednarski and all

subsequent postconviction counsel relied upon Tegtmeier's advice and did not investigate whether the defects that mandated reversal in his codefendants' cases existed in Cain's case; (4) Cain investigated his own case between 2005 to 2021, "but his conflicted counsel failed to identify the meritorious claims"; and (5) the passage of time would not affect the prosecution's ability to defend against this claim. For the limited purpose of evaluating the timeliness issue, we accept these allegations as true. *See Chavez-Torres*, ¶ 11. Nonetheless, for two reasons, we conclude that Cain failed to allege facts, that if proved at a hearing, would establish justifiable excuse or excusable neglect preventing him from asserting claims that trial, appellate, or prior postconviction counsel were ineffective for failing to challenge his attempted murder instruction.

¶ 45 First, Cain's allegation that Tegtmeier erroneously advised him about the reversible errors in his codefendants' cases does not justify his delay in asserting claims *related to his attempted murder instruction.* The instructional errors in the codefendants' cases related to their felony murder instructions; neither codefendant challenged their attempted murder instructions on appeal because

both were acquitted of attempted murder. Tegtmeier's allegedly erroneous advice cannot justify decades of delay in raising claims that were not at issue in, and thus not affected by, the codefendants' cases.

¶ 46 Instead, the fact that both codefendants were acquitted of attempted murder should have given Cain and his counsel early reason to question why the verdicts were different, including prompting him to compare the jury instructions as he does now in support of his argument that his felony murder instruction was erroneous. Notably, Tegtmeier challenged the attempted murder instruction on direct appeal, so for that reason too, Cain and his postconviction counsel were on notice that there may have been errors with the instruction.

¶ 47 Cain does not allege that Tegtmeier (or any of his other counsel) misadvised him regarding the attempted murder instruction, though such allegations likely would not establish justifiable excuse or excusable neglect anyway. *See Chavez-Torres*, ¶ 24 ("[A]n attorney's failure to advise a client does not generally establish justifiable excuse or excusable neglect."). And although Cain specifically alleges that he investigated his case, he does not

27

explain why he was unable to discover this alleged instructional error — or trial, appellate, or postconviction counsel's alleged ineffective assistance in failing to raise the error — earlier. *See People v. Slusher*, 43 P.3d 647, 651 (Colo. App. 2001) ("[R]ecent discovery of a legal basis for a collateral attack on a conviction does not constitute excusable neglect where the defendant has not otherwise demonstrated some unavoidable hindrance that would cause a reasonably prudent person to neglect to pursue timely collateral relief."); *People v. Vigil*, 955 P.2d 589, 591 (Colo. App. 1997) (The "defendant's indigence, ignorance of the law, and lack of legal assistance did not amount to a sufficient showing of justifiable excuse or excusable neglect.").

¶ 48 Second, even if Bednarski, as an attorney working at the same firm as Tegtmeier, had an actual conflict of interest that prevented Cain from discovering Tegtmeier's alleged ineffectiveness related to the attempted murder instructional error, that impediment lasted only until unconflicted postconviction counsel became involved. Cain does not allege that Noble, who began representing Cain in connection with the appeal of his 2010 postconviction motion and who co-counseled his 2013 postconviction motion, had an actual

28

conflict of interest. Noble worked at a different firm than Tegtmeier and Bednarski, and Cain cites no authority supporting a conclusion that any conflict Bednarski had was imputed to Noble simply because of their co-counsel relationship. *See* Colo. RPC 1.10(a) (conflicts of interest may be imputed "[w]hile lawyers are associated in a firm"); *People ex rel. Peters v. Dist. Ct.*, 951 P.2d 926, 930 (Colo. 1998) ("[T]he 'rule of imputed disqualification[]' appears in Rule 1.10(a) of the Colorado Rules of Professional Conduct and requires disqualification of all members of a law firm when any one of them practicing alone would be disqualified because of a conflict of interest."); *see also Smith v. Whatcott,* 774 F.2d 1032, 1034 (10th Cir. 1985) (explaining that it is a "generally stated rule that a co-counsel relationship will not alone warrant disqualification"); *Anwar v. United States*, 648 F. Supp. 820, 827 (N.D.N.Y. 1986) (conflict of co-counsel was not imputed when the facts alleged did "not indicate a general partnership relationship between [the attorneys] extending beyond the representation of petitioner himself"), *aff'd,* 823 F.2d 544 (2d Cir. 1987); *Est. of Jones v. Beverly Health & Rehab. Servs., Inc.,* 68 F. Supp. 2d 1304, 1311 (N.D. Fla. 1999) ("The fact that the two firms have associated as co-counsel

29

does not itself establish that their relationship is so close as to impute disqualification.").

¶ 49 Cain does not explain why he or Noble could not have discovered the alleged instructional error anytime between 2010 and 2023. *See Clouse*, 74 P.3d at 341 ("[T]he justifiable excuse or excusable neglect analysis begins with the premise that ineffective postconviction counsel claims cannot be asserted until after timely postconviction relief proceedings and appeals therefrom are exhausted. Thereafter, the time to assert ineffective postconviction counsel claims should be assessed in light of the *Wiedemer* justifiable excuse or excusable neglect factors."); *Wiedemer*, 852 P.2d at 441 (a defendant must account for the circumstances of the entire period of delay from the conviction). Because Cain has not alleged facts that, taken as true, establish justifiable excuse or excusable neglect to allow an untimely collateral attack on his attempted murder conviction, the postconviction court did not err by concluding that this claim is time barred. *See* § 16-5-402(2); *Clouse*, 74 P.3d at 340.

## IV.    Disposition

¶ 50    We affirm the postconviction court's denial of Cain's Crim. P. 35(c) motion.

JUDGE FREYRE and JUDGE SCHUTZ concur.